UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| EDWIN BURGOS | : | |
| | : | |
| v. | : | C.A. No. 13-486ML |
| | : | |
| CAROLYN W. COLVIN | : | |
| Commissioner of the Social Security | : | |
| Administration | : | |

## REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Disability Insurance Benefits ("DIB") and Social Security Disability Insurance ("SSDI") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g). Plaintiff filed his Complaint on June 27, 2013 seeking to reverse the decision of the Commissioner. On March 14, 2014, Plaintiff filed a Motion to Reverse, Without or, Alternatively, With a Remand for a Rehearing, the Commissioner's Final Decision. (Document No. 9). On June 4, 2014, the Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner. (Document No. 12).

This matter has been referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B); LR Cv 72. Based upon my review of the record, the parties' submissions and independent research, I find that there is substantial evidence in the record to support the Commissioner's decision and finding that Plaintiff is not disabled within the meaning of the Act. Consequently, I recommend that Plaintiff's Motion to Reverse, Without or, Alternatively, With a Remand for a Rehearing, the Commissioner's Final Decision (Document No.

9) be DENIED and that Defendant's Motion for an Order Affirming the Decision of the Commissioner (Document No. 12) be GRANTED.

## I.     PROCEDURAL HISTORY

Plaintiff filed applications[1] for DIB (Tr. 157-163) and SSI (Tr. 164-166) on May 20, 2010 alleging disability since September 30, 2008.  (Tr. 157).  Plaintiff's date last insured is September 30, 2012.  The applications were denied initially on October 22, 2010 (Tr. 106-109) and on reconsideration. (Tr. 113-118). Plaintiff requested an Administrative hearing. (Tr. 119). On March 30, 2012, a hearing was held before Administrative Law Judge Jason Mastrangelo (the "ALJ") at which time Plaintiff, represented by counsel and  assisted by an interpreter, and a vocational expert ("VE") appeared and testified.  (Tr. 36-66).  The ALJ issued an unfavorable decision to Plaintiff on April 13, 2012.  (Tr. 17-31).  The Appeals Council denied Plaintiff's Request for Review on April 30, 2013, therefore the ALJ's decision became final.  (Tr. 1-3).  A timely appeal was then filed with this Court.

## II.     THE PARTIES' POSITIONS

Plaintiff argues that the ALJ misinterpreted the limitations assessed by the consulting psychologist and erred at Step 2 by not finding his degenerative disc disease to be a severe impairment.

The Commissioner disputes Plaintiff's claims and asserts that the ALJ properly interpreted the medical evidence of record and that his RFC assessment is supported by substantial evidence.

---

[1]  The applications relate to a closed period of claimed disability between September 30, 2008 and August 1, 2011.  Plaintiff resumed working in August 2011, but had ceased working by the date of the hearing in March 2012.  Following the ALJ's unfavorable decision, Plaintiff filed a subsequent application for disability benefits, which was awarded by the Commissioner.

She also asserts that the ALJ properly evaluated the evidence regarding Plaintiff's back impairment and that his Step 2 findings are supported by the record.

## III.    THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law.  Nguyen v. Chater, 172 F.3d  31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).  Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence

establishes without any doubt that the claimant was disabled.  <u>Seavey v. Barnhart</u>, 276 F.3d 1, 11 (1st Cir. 2001) <u>citing</u>, <u>Mowery v. Heckler</u>, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences.  <u>Seavey</u>, 276 F.3d at 8.  To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim.  <u>Id.</u>; <u>accord</u> <u>Brenem v. Harris</u>, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision.  <u>Freeman v. Barnhart</u>, 274 F.3d 606, 609-610 (1st Cir. 2001).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  <u>Diorio v. Heckler</u>, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council).  After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction.  <u>Freeman</u>, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g).  To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there

-4-

is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level. See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. Id. With a sentence six remand, the parties must return to the court after remand to file modified findings of fact. Id. The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. Id.

### IV.    THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.    Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments, is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may

discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).  When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion.  20 C.F.R § 404.1527(c).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  See 20 C.F.R. § 404.1527(c)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527(e).  The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner.  20 C.F.R. § 404.1527(e).  See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

**B.      Developing the Record**

The ALJ has a duty to fully and fairly develop the record.  Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991).  The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained.  See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987).  The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel.  Id.  However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty.  See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

**C.      Medical Tests and Examinations**

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986).  In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision.  Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

**D.      The Five-step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not

disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c). If a claimant

becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability.  Id.

### E.    Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  Seavey, 276 F.3d at 5.  In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant.  Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989).  This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids").  Seavey, 276 F.3d at 5.  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors.  Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills.  Nguyen, 172 F.3d at 36.  In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert.  Heggarty, 947 F.2d at 996.  It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.  See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981).  In any event, the ALJ must make a specific finding as to whether the non-

exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1. Pain

"Pain can constitute a significant non-exertional impairment." Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423(d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

    (1)    The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

    (2)    Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

    (3)    Type, dosage, effectiveness, and adverse side-effects of any pain medication;

    (4)    Treatment, other than medication, for relief of pain;

    (5)    Functional restrictions; and

    (6)    The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

### 2. Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V. APPLICATION AND ANALYSIS

Plaintiff was fifty-seven years old on the date of the ALJ's decision. (Tr. 41). Plaintiff completed high school and attended one year of college in Puerto Rico in 1970. (Tr. 196). Plaintiff is not literate in English. (Tr. 195). Plaintiff worked in the past as a Police Officer in Puerto Rico from 1980 to 1996. (Tr. 197). Plaintiff came to the United States in 1997 and worked as a machine

operator until 2008.  Id.  Plaintiff alleges disability due to PTSD, a panic disorder, a major depressive disorder and a back impairment.  (Tr. 23).

In January 2009, Plaintiff complained of back pain, but a physical and neurological examination was unremarkable.  (Tr. 256-257).

During an examination in February 2010, Plaintiff's back was tender along the lower lumbar spine, but he appeared otherwise normal, with a 5/5 motor strength in all extremities, intact sensation, a normal gait and full range of motion in his spine.  (Tr. 246).  Plaintiff's primary care physician, Dr. Edgar Pollak, monitored his back pain which was treated with ibuprofen.  (Tr. 274, 280).

In February 2011, Plaintiff complained that his back pain had become severe, and he was not getting any relief from the ibuprofen.  (Tr. 292).  A physical examination revealed point tenderness in the lumbosacral spine and positive straight-leg raising bilaterally, but normal strength and sensation.  Id.  An x-ray showed only moderate degenerative changes.  (Tr. 294).  Dr. Pollak prescribed Flexeril and Vicodin and referred him for physical therapy.  (Tr. 292, 381-407).  According to an April 2011 physical therapy progress note, Plaintiff was "still going to the gym and running everyday."  (Tr. 398).  In May 2011, he told Dr. Pollak that aquatherapy was helping.  (Tr. 324).  Plaintiff used ibuprofen during the day to manage his pain, reserving Vicodin only for nighttime.  Id.

In June 2011, Plaintiff reported that he had been using higher doses of Vicodin than prescribed to help with morning back pain.  (Tr. 321).  Dr. Pollak initially prescribed a higher dosage of Vicodin, id., but two days later Dr. Pollak determined that he could no longer prescribe Plaintiff Vicodin because Plaintiff's urine tested positive for cocaine.  (Tr. 322).  During his next

scheduled visit with Dr. Pollak, Plaintiff explained that he had smoked marijuana laced with cocaine, but did not realize it had cocaine in it. (Tr. 319). After Plaintiff's next drug screen came back negative, Dr. Pollak restarted him on Vicodin. (Tr. 310, 319-320). According to Dr. Pollak's treatment notes, Plaintiff's physical examinations remained basically unchanged since February 2011. (Tr. 292, 306, 310, 319, 321, 324).

In August 2011, approximately three weeks after his claimed period of disability ended, Plaintiff reported that he had been working in his friend's garage over the preceding week and his back pain worsened. (Tr. 310). Plaintiff's back pain was well controlled on Vicodin, and he reported that he was implementing what he learned in physical therapy at the gym. Id.

A September 2011 MRI of Plaintiff's lumbar spine showed "[d]egenerative disc disease and facet enlargement which causes moderate central canal stenosis at L4-L5," as well as "moderately tight left lateral recess and left foramina stenosis at L4-L5." (Tr. 308). The reviewing physician explained that the findings were within normal limits, and that Plaintiff was not an appropriate candidate for surgery. (Tr. 418).

In October 2011, two months after Plaintiff's alleged period of disability ended, Plaintiff was examined by Dr. Hossam El-Zeftawy, a pain specialist. (Tr. 326-327). Plaintiff reported that he was unemployed. (Tr. 326). Dr. El-Zeftawy noted that physical therapy provided "some help," but Plaintiff continued to report continuous pain that ranged from a 4/10 to an 8-9/10. Id. Upon physical examination, Plaintiff was in no acute distress and fully oriented. (Tr. 327). He had severe tenderness and limited range of motion in his lumbar spine, but his gait was normal, and he had no motor deficit in his lower extremities. Id. Dr. El-Zeftawy recommended a course of injection therapy. Id.

In February 2010, Plaintiff met with Eric Paesano, L.I.C.S.W., complaining of depression and anxiety dating back to 1988, when he shot and killed someone while on duty as a police officer in Puerto Rico. (Tr. 250). During a mental status examination, Plaintiff reported passive suicidal thoughts and anxiety, but otherwise showed no mental deficits. (Tr. 251). Mr. Paesano assessed a Global Assessment of Functioning ("GAF") score of 50 and referred Plaintiff for medical evaluation. Id.

On March 11, 2010 Plaintiff met with Susan Gagnon, P.C.N.S., complaining of symptoms of anxiety disorder, obsessive compulsive disorder, panic disorder, PTSD, depression, schizophrenia, psychosis and suicidal ideation. (Tr. 241-242). He reported auditory and visual hallucinations. (Tr. 242-243). Upon an examination of his mental status, Plaintiff appeared anxious and fearful and had limited insight. (Tr. 243). However, he was alert and fully oriented; his speech was clear and normal; his thought process and content were intact; and he showed good attention, good judgment, low aggression, good control of anger and impulses and no suicidal or homicidal ideation. Id. Ms. Gagnon assessed a GAF score of 50. (Tr. 233).

During a counseling session with Mr. Paesano the following day, Plaintiff expressed concern that his unemployment benefits were going to run out and said that he was looking to get a job as a machine worker. (Tr. 239). Upon an examination of his mental status, Plaintiff's mood was anxious, angry, uneasy and tense, but his mental condition was otherwise unremarkable. (Tr. 239-240). He denied any hallucinations. (Tr. 240).

On April 5, 2010 Plaintiff returned to Ms. Gagnon for a follow-up appointment. Ms. Gagnon observed that Plaintiff presented with the same mental status findings that she made during her March 11, 2010 examination of Plaintiff. (Tr. 237, 242-243).

On April 8, 2010 Plaintiff told Mr. Paesano that he felt anxious and was "scared of losing control." (Tr. 235). He appeared normal upon a mental status examination, with no deficits in psychomotor functioning, memory, attention or thought. (Tr. 235-236). Plaintiff denied any hallucinations or delusions. (Tr. 235).

In May 2010, Plaintiff complained to Ms. Gagnon that he had periods where he did not sleep for days with excessive energy and racing thoughts. (Tr. 233). Upon examination, he had an anxious mood and affect; he was talkative and his speech was rapid and pressured; his insight was limited; his thought process was tangential; and he endorsed auditory and visual hallucinations. Id. Ms. Gagnon also observed that Plaintiff was alert and fully oriented, and showed good attention, good judgment, unremarkable thought content, low aggression, good control of anger and impulses and exhibited no suicidal or homicidal ideation. Id. Ms. Gagnon also examined Plaintiff on June 1, 2010 and observed and recorded the same mental status findings. (Tr. 288).

On January 17, 2011, Plaintiff reported that his depression and sleep patterns were improving and that he had no hallucinations. (Tr. 295-296). During six appointments with Ms. Gagnon between June 29, 2010 and January 17, 2011, Plaintiff's mood was generally anxious, but his mental status examinations were otherwise unremarkable. (Tr. 270, 278, 282, 286, 295, 297). His psychomotor activity, speech, memory, attention and thought process and content were all normal. Id. During that same time period, Plaintiff denied experiencing any hallucinations or delusions. Id.

In August 2011, Plaintiff reported that he went to apply for a job, but the man responsible for hiring "set me off." (Tr. 313). Nancy Shea, P.C.N.S., observed no significant deficits upon mental status examination. (Tr. 312).

In March 2012, seven months after Plaintiff's alleged period of disability ended, Plaintiff reported hearing "mumblings" and seeing shadows. (Tr. 421). A mental status examination was otherwise unremarkable. Id.

In October 2010, Plaintiff underwent a consultative psychiatric examination with Luz Teixeira, Ph.D. (Tr. 260-264). He reported a history of inpatient psychiatric treatment for two days due to work-related stress when he was living in Puerto Rico. (Tr. 261). He said that he took his gun with him everywhere he went when he was off-duty, because he thought someone was following him. Id. Upon mental status examination, Plaintiff's speech was "very fast" and "pressured," but he was easy to understand. (Tr. 262). He denied current delusions, but reported visual and auditory hallucinations, i.e., seeing people in his room at night and hearing people calling him. Id. His insight, judgment and persistence were intact, but his attention and concentration appeared poor, and he had some difficulty with memory tasks and arithmetic calculations. (Tr. 262-263).

Plaintiff reported that he cleaned his house with his son's help, cooked, did the laundry and managed his bills, and his daughter did the grocery shopping. (Tr. 263). He denied having any hobbies, but reported that he went to the gym, walked and watched television. Id. He appeared to have no significant social impairment. Id. Dr. Teixeira diagnosed Plaintiff with mood disorder, PTSD, panic disorder without agoraphobia, and "R/O [rule out] cognitive disorder." Id. She assessed a GAF score of 50 and opined that Plaintiff was capable of managing his own funds. (Tr. 263-264).

In December 2011, Plaintiff's attorney arranged for a consultative physical examination with Dr. Steven McCloy. (Tr. 411-414). Plaintiff reported that he had been laid off from his last job as a machine operator in 2008, and admitted that he punched his boss after having a panic attack. (Tr.

411).  A physical examination revealed a tentative but non-antalgic gait; restricted range of motion in the spine; diminished reflexes and sensation in the lower extremities; positive straight-leg raising bilaterally; and low-back pain during stress testing.  (Tr. 412).  Dr. McCloy opined that Plaintiff had "substantial arthritis in his lumbar spine" with "clinical findings suggestive of nerve root impairment."  (Tr. 414).  He opined that Plaintiff's "low back pain and arthritis significantly interfere with activities of daily living and would interfere with his ability to lift and carry, push/pull, work overhead, walk, and stand."  Id.  Dr. McCloy added: "I am not qualified to evaluate his psychiatric condition but this appears substantial and significant to interfere with is [sic] ability to obtain and keep work."  Id.  He opined that Plaintiff could work for a total of three hours per day.  (Tr. 415).

In February 2011, a state agency psychologist, Dr. Stephen Clifford, reviewed the records and determined that Plaintiff's depression and anxiety caused a mild restriction of his activities of daily living, moderate limitations in social functioning and concentration, persistence, or pace and that Plaintiff experienced no episodes of decompensation.  (Tr. 89-90).  Dr. Clifford concluded that, despite his mental limitations, Plaintiff would do well with simple tasks but not complex ones; could understand, remember, and complete simple 1, 2 or 3-step tasks; could complete two-hour shifts for eight-hour days and forty-hour weeks, with normal supervision; would not work well with the general public; would not work well in large groups/large spaces; would do best in a small work setting, with minimal contact with others and limited social interaction; and, with the foregoing limitations, could work with a few co-workers and a supervisor.  (Tr. 91 -92).

In May 2011, Mr. Paesano completed an Emotional Impairment Questionnaire, in which he opined that Plaintiff's PTSD and depression caused "moderate" to "moderately severe" mental limitations that precluded full-time employment. (Tr. 300-303).

In November 2011, Dr. Pollak completed a Disability Questionnaire, in which he opined that Plaintiff suffered from severe emotional impairment, but had no severe physical impairment. (Tr. 408). When asked to identify Plaintiff's symptoms, however, he stated that the only symptom was "back pain." Id. He opined that Plaintiff's symptoms were "moderate" and would preclude full-time, competitive employment, though Plaintiff "may be able to do part time work." (Tr. 409). In March 2012, Ms. Shea completed an Emotional Impairment Questionnaire. She opined that Plaintiff had "moderately severe" to "severe" mental limitations that precluded full-time, competitive employment. (Tr. 439-442). Ms. Shea cited Plaintiff's symptoms of psychosis and paranoia to support her opinion. (Tr. 440).

A.    The ALJ's Decision

The ALJ decided this case adverse to Plaintiff at Step 4. At Step 2, the ALJ found that Plaintiff's PTSD, panic disorder and depression were "severe" impairments within the meaning of 20 C.F.R. §§ 404.1520(c) and 416.920(c). (Tr. 23). The ALJ did not, however, find that Plaintiff's back impairment was a "severe" impairment since the record failed to establish that it "imposed more than a minimal impairment of [Plaintiff's] ability to engage in basic work activities for a period of at least 12 continuous months." (Tr. 24). As to RFC, the ALJ concluded that, during the closed benefit period in issue, Plaintiff was capable of performing a full range of work at all exertional levels but subject to nonexertional limitations related to attention, work pace and interpersonal relations. (Tr. 25). Based on this RFC and testimony from the VE, the ALJ concluded at Step 4 that

Plaintiff was not disabled because he was capable of performing his past work as a machine operator.  (Tr. 30).

### B.      The ALJ Did Not Misinterpret the Consulting Psychologist's Opinion

Dr. Stephen Clifford, Ph.D., a consulting psychologist, reviewed Plaintiff's records and opined as to his mental RFC on February 22, 2011.  (Tr. 86-94).  Dr. Clifford noted that the records indicated that Plaintiff "avoids large crowds, due to fears and agitation."  (Tr. 90).  He assessed moderate limitations in "social interaction" summarized as follows:

> [C]laimant is frequently irrationally fearful and agitated around others, while at other times, when comfortable (familiar people or places), is not.  Will not work well with the general public, will not work well in large groups/large spaces.  Will do best in small work setting, with a minimum of contract with others/limited social interaction.  With these limitations, will be able to work with a few co-workers and a supervisor.

(Tr. 92). The ALJ accurately summarized this opinion in his decision and gave it "significant probative weight" because he found it to be "supported by and consistent with the record as a whole."  (Tr. 30).

Plaintiff argues that the ALJ misinterpreted Dr. Clifford's opinion and erred by failing to include any limitations with regard to large spaces in his RFC and in the hypothetical questions posed to the VE.[2]  Plaintiff effectively interprets Dr. Clifford's opinion to be that he could not work

_____

[2]  The Commissioner persuasively argues that Plaintiff's position is undermined by his subsequent return to work at a factory in 2011 and his testimony that he left that job due to back pain.  (Tr. 43).  There is no indication in the record that he was unable to perform that job because it was performed in a large space or that working in large spaces generally presented a problem for Plaintiff.

in "large groups <u>or</u> in large spaces."  (Document No. 9 at p. 5).  (emphasis added).[3]  However, Dr.

Clifford does not say that Plaintiff could not work in "large spaces."  He opined that Plaintiff would

not work well in "large groups/large spaces" and would do best in a "small work setting, with a

minimum of contact with others/limited social interaction" and would be able to work "with a few

co-workers and a supervisor."  (Tr. 92).  The ALJ appropriately interpreted Dr. Clifford's opinion

as primarily focused on Plaintiff's social interactions with others in the workplace as opposed to the

size of the workspace.  His RFC limited Plaintiff to "occasional interaction with co-workers and

supervisors" with no interaction with the public and no team oriented tasks.  (Tr. 25).  He also

assessed a limitation to working with things/objects rather than people.  <u>Id.</u>  The ALJ's interpretation

is a supportable interpretation of the record and consistent with Dr. Clifford's description of the

limitations in question as applying to "social interaction" and not environmental limitations.  (Tr.

92).  Plaintiff has shown no error in the ALJ's interpretation of Dr. Clifford's opinion, his RFC

assessment or the hypothetical questions he posed to the VE.  Since the ALJ's conclusions in that

regard are reasonably supported by the record, they are entitled to deference.

### C.    Plaintiff Has Shown No Error in the ALJ's Step 2 Determination

At Step 2, the ALJ found Plaintiff's mental impairments to be "severe" within the meaning

of the applicable regulations.  However, he concluded that the record did not support such a finding

as to Plaintiff's back impairment.  (Tr. 23-24).  Plaintiff contends that the ALJ's findings as to his

back impairment are not supported by substantial evidence.

---

[3]  Plaintiff also contends that the ALJ erred by failing to mention or evaluate the opinion of Eric Paesano,
LISCW.  However, it is apparent from the ALJ's decision that he thoroughly considered this opinion but mistakenly
identified Nurse Gagnon and not Mr. Paesano as the source.  (Tr. 29).  Thus, any error is harmless.

At Step 2, an impairment is considered "severe" when it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). The Commissioner has adopted a "slight abnormality" standard which provides that an impairment is "non-severe" when the medical evidence establishes only a slight abnormality that has "no more than a minimal effect on an individual's ability to work." Social Security Ruling ("SSR") 85-28. Although Step 2 is a de minimis standard, Orellana v. Astrue, 547 F. Supp. 2d 1169, 1172 (E.D. Wash. 2008) (citing Bowen v. Yuckert, 482 U.S. 137, 153-154 (1987)), it is still a standard and a standard on which Plaintiff bears the burden of proof. See Desjardins v. Astrue, No. 09-2-B-W, 2009 WL 3152808 (D.Me. Sept. 28, 2009). In his Step 2 analysis, the ALJ thoroughly discussed each of Plaintiff's impairments in the context of the record as a whole and concluded that there was insufficient medical evidence presented establishing that Plaintiff suffered a "severe" impairment. (Tr. 22-28).

An ALJ may properly base his Step 2 finding on the absence of medical evidence supporting a finding that a claimant suffers from a "severe medically determinable physical or mental impairment" which "significantly limits" her physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii), (c). (emphasis added). See also Teves v. Astrue, No. 08-246-B-W, 2009 WL 961231 (D.Me. April 7, 2009) ("[A] claimant's testimony about symptoms is insufficient to establish a severe impairment at Step 2 in the absence of medical evidence."). At Step 2, Plaintiff bore the burden of demonstrating that he had a "medically determinable" physical or mental impairment(s) that significantly limited his ability to do basic work activity at the relevant time. Id. The ALJ found that Plaintiff did not meet that burden, and Plaintiff has shown no error in his finding.

Although Plaintiff challenges the ALJ's Step 2 determination, he does not specifically identify any legal error in the ALJ's evaluation of the medical evidence and does not specifically identify medical evidence of record that would require a contrary Step 2 finding. The ALJ thoroughly and accurately reviewed the medical evidence and provided record support for his conclusions.

Plaintiff takes issue with two factual findings made by the ALJ. In particular, he argues that substantial evidence does not support the ALJ's findings that "he walks up to 10 miles on a machine" and that he "had minimal treatment for his back during the period in question." (Tr. 23, 26). Plaintiff is incorrect as to both points. According to the hearing transcript, Plaintiff goes to the gym to "walk and walk" and walks on a machine "ten miles" and "put[s] it on 10 or 15 and I walk awhile, easy." (Tr. 50-51). He also testified that he then "get[s] on the bicycle and go[es] easy." (Tr. 51). On October 6, 2010, Plaintiff told Dr. Texeira that his interests included going to the gym and walking. (Tr. 263). On April 14, 2011, he told his physical therapist that he was "still going to the gym and running every day." (Tr. 398). On February 6, 2012, Plaintiff reported that he was "doing therapy at his gym," "lifting leg weights, and treadmill." (Tr. 423).

While Plaintiff may be correct that the reference to walking ten miles per day[4] on a treadmill is a mistranslation by the interpreter, any such error would be harmless since the record as a whole is clear that Plaintiff was active at the gym during the entirety of the relevant period. The ALJ also accurately observes that Plaintiff's overall reported activities of daily living were inconsistent with

---

[4] Although speculative, Plaintiff's counsel reasonably posits that Plaintiff actually testified that he set the treadmill's power or elevation level at 10. (Document No. 9 at p. 8).

the level of impairment alleged.  Finally, the record reflects that Plaintiff was able to return to factory work from August 2011 to March 2012.  (Tr. 40).

Plaintiff has also not shown that the ALJ's conclusion that he received minimal treatment for his back during the relevant period, i.e., September 30, 2008 to August 1, 2011, is not sufficiently supported by the record.  While the record shows that Plaintiff sought additional treatment and testing for his back in September and October of 2011 (Tr. 326-338), the record also reveals conservative treatment prior to that time which is consistent with the ALJ's finding of minimal treatment during the relevant period.

## VI.    CONCLUSION

For the reasons discussed herein, I recommend that Plaintiff's Motion to Reverse, Without or, Alternatively, With a Remand for a Rehearing, the Commissioner's Final Decision (Document No. 9) be DENIED and that Defendant's Motion for an Order Affirming the Decision of the Commissioner (Document No. 12) be GRANTED.  Further, I recommend that Final Judgment enter in favor of Defendant.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt.  See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


   /s/ Lincoln D. Almond
LINCOLN D. ALMOND

United States Magistrate Judge
July 16, 2014